IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

TIMOTHY MICHAEL O'NEAL
and HELEN M. MORRIS, Chapter 13 Trustee,

    Plaintiffs,

v.              Civil Action No. 3:10-CV-40
                 (BAILEY)

CAPITAL ONE AUTO FINANCE, INC.,

    Defendant.

## ORDER DENYING DEFENDANT CAPITAL ONE AUTO FINANCE, INC'S PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

Currently pending before the Court is Defendant Capital One Auto Finance, Inc.'s Partial Motion for Judgment on the Pleadings [Doc. 106], filed June 10, 2011. The plaintiffs responded on June 16, 2011 [Doc. 110], and the defendant replied on June 23, 2011 [Doc. 113]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendant's motion should be **DENIED**.

## BACKGROUND

**I. Factual Allegations**

The plaintiffs, Timothy Michael O'Neal and his Chapter 13 Trustee, Helen M. Morris, allege the following facts in the challenged Complaint [Doc. 1]. On November 10, 2009, Mr. O'Neal received a telephone call from a representative of Captial One Auto Finance, Inc. ("COAF") regarding his auto loan account. (Id. at ¶ 11). Mr. O'Neal advised the individual that he was represented by an attorney and provided his attorney's name and telephone number. (Id.). Nevertheless, between November 11, 2009, and December 30,

1

2009, COAF called Mr. O'Neal seventy-seven (77) times. (Id. at ¶¶ 12-47). During that same time period, Mr. O'Neal again provided COAF with his attorney's contact information on November 11, 2009, and December 16, 2009. (Id. at ¶¶ 12, 38).

## II. Procedural History

On April 8, 2010, the plaintiffs filed this action claiming that COAF violated the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va. Code § 46A-1-101, *et seq.* [Doc. 1]. Specifically, the plaintiffs claim that COAF's telephone calls violated W.Va. Code § 46A-2-128(e) ("section 128(e)"), which generally prohibits a debt collector from communicating with a consumer whenever it appears or could be easily ascertained that he or she is represented by an attorney.

On June 10, 2011, COAF moved for judgment on the pleadings, arguing that the plaintiff's section 128(e) claim is preempted by the National Bank Act ("NBA"), 12 U.S.C. § 24, and a regulation promulgated thereunder by the Office of Comptroller of the Currency ("OCC"), 12 C.F.R. § 7.4008 [Doc. 106]. In support of its preemption argument, COAF cites **Frye v. Bank of America, N.A.**, 2010 WL 3244879 (N.D. W.Va. Aug. 16, 2010) and **Lomax v. Bank of America, N.A.**, 435 B.R. 362 (N.D. W.Va. Aug. 18, 2010), in which this Court found nearly identical section 128(e) claims preempted by the NBA [Doc. 107]. In response, the plaintiffs argue that their claims are not preempted because requiring COAF to comply with section 128(e) does not present an obstacle to the accomplishment of the NBA's objectives, and that **Frye** and **Lomax** were wrongly decided [Doc. 110]. COAF replies that this Court should follow **Frye** and **Lomax**, but even if not, COAF argues that section 128(e) presents an obstacle to its ability to collect debts [Doc. 113].

# DISCUSSION

## I. Applicable Standard

Matters not raised in a Rule 12(b)(6) motion may be raised in a motion for judgment on the pleadings. The standard to be applied is the same as for a motion to dismiss. *See* **Pisciotta v. Old Not. Bancorp**, 499 F.3d 629, 633 (7th Cir. 2007); **Plain v. AT&T Corp.**, 424 F.Supp.2d 11, 20 n. 11 (D. D.C. 2006); **Sprint Telephony PCS, L.P. v. County of San Diego**, 311 F.Supp.2d 898 (S.D. Cal 2004). More specifically, in assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. **Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.**, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." **Bell Atl. Corp. v. Twombly**, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" **In re Mills**, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." **Ashcroft v. Iqbal**, — U.S. —, 129 S. Ct. 1937, 1949 (May 18, 2009) (internal quotations and citations omitted).

## II. Analysis

In its motion, COAF[1] argues that the plaintiffs' section 128(e) claim is preempted by the NBA and one of the OCC regulations promulgated thereunder. In support of its argument, COAF cites this Court's *Frye* and *Lomax* decisions. However, in light of subsequent case law, this Court finds that those decisions should not control the preemption issue in this case. Below, this Court will instead consider NBA preemption afresh. First, this Court will pinpoint the proper NBA preemption standard to be applied to a state consumer protection statute. Second, this Court will outline the three reasons for abandoning the standard applied in *Frye* and *Lomax*. Finally, this Court will apply the appropriate NBA preemption standard to section 128(e) of the WVCCPA.

### A. Federal Preemption

In this section, this Court will discuss the origin and cornerstones of federal preemption, including whether the presumption against preemption applies in this case. Next, this Court will outline the three types of preemption and select the appropriate analysis to apply here. Finally, this Court will determine the applicability of 12 C.F.R. § 7.4008, the OCC's non-real estate lending regulation.

#### 1. Cornerstones of Federal Preemption

The Supremacy Clause of Article VI of the Constitution provides that the laws of the United States "shall be the supreme law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. In

---

[1]The plaintiffs do not, and cannot, dispute that COAF, which is an operating subsidiary of Capital One, N.A., is treated as a national bank for purposes of NBA preemption. *See* ***Watters v. Wachovia Bank, N.A.***, 550 U.S. 1, 21 (2007).

4

considering federal preemption, a court must begin, as "in all pre-emption cases," with the "two cornerstones" of preemption jurisprudence: first, that "the purpose of Congress is the ultimate touchstone in every preemption case," and second, "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1194-95 (2009).

In *Wyeth*, the Supreme Court articulated a simple test for application of the presumption against preemption: "the historic presence of state law" in an area. *Id.* at 1195 n.3. This is the test even if the "Federal Government has regulated [the area] for more than a century." *Id.* "Thus, the presumption against preemption has full force here – even though the federal government has regulated national banks for more than a century – because the doctrine would displace state consumer-protection statutes, which fit squarely within the States' traditional police powers to protect the well being of their own citizens." *Smith v. BAC Home Loans Servicing, LP*, — F.Supp.2d — , 2011 WL 843937, * 4 (S.D. W.Va. Mar. 11, 2011) (Goodwin) (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 128, 230 (1947); *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 42-43 (2d Cir. 1990)); *but see Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S.Ct. 2710, 2720 (2009) ("We have not invoked the presumption against pre-emption, and think it unnecessary to do so in giving force to the plain terms of the National Bank Act.").

The presumption against preemption is amplified when federal law does not address the subject regulated by state law and would leave a plaintiff without a remedy. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192 (4th Cir. 2007) (holding that presumption against preemption is "stronger still against preemption of state remedies . . . when no

5

federal remedy exists") (internal quotations omitted); *Smith*, 2011 WL 843937 at *11 ("The presumption against preemption is fortified in this case because no federal remedy exists for the plaintiffs in these circumstances."). Here, the preemption against preemption is particularly strong because the Fair Debt Collection Practices Act ("FDCPA"), which has a provision nearly identical to section 128(e), does not apply to collection activity by the creditor. *See* 15 U.S.C. § 1692a; *see also* ***Bate v. Wells Fargo Bank, N.A.***, — B.R. — , 2011 WL 2469689, *8 (Bkrtcy. M.D. Fla. June 22, 2011) (noting importance that FDCPA was not applicable and that Florida's counterpart to the WVCCPA provided the only remedy).

### 2. Types of Preemption

The Supreme Court has identified three types of preemption: field preemption, express preemption, and conflict preemption. *See* ***H&R Block E. Enters., Inc. v. Raskin***, 591 F.3d 718, 722 (4th Cir. 2010). Field preemption applies only where the "federal scheme of regulation of a defined field is so pervasive that Congress must have intended to leave no room for the states to supplement it." ***City of Charleston, S.C. v. A Fisherman's Best, Inc.***, 310 F.3d 155, 169 (4th Cir. 2002). In ***Watters v. Wachovia Bank, N.A.***, 550 U.S. 1 (2007), the Supreme Court made clear that the NBA does not have field-preemptive force such that states may not regulate national banks at all. To the contrary, national banks "are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Id.* at 12; *see also* ***Smith***, 2011 WL 843937 at *4 ("Congress and the OCC never intended to occupy the entire field of national banking regulation.").

Express preemption arises "when Congress has clearly expressed an intention" to

6

preempt state law. ***College Loan Corp. v. SLM Corp.***, 396 F.3d 588, 595-96 (4th Cir. 2005). "The NBA contains no express preemption provision. Instead, the NBA provides national banks with several broad powers and vests the OCC with the power to oversee national banks." ***Smith***, 2011 WL 843937 at *6. Therefore, "express preemption is not applicable to this case because Congress, through the NBA, has not clearly expressed its intent to preempt state consumer protection laws." ***Bate***, 2011 WL 2469689 at 3.

Conflict preemption arises when state laws "prevent or significantly interfere with the national bank's exercise of its powers." ***Barnett Bank of Marion County, N.A. v. Nelson***, 517 U.S. 25, 33 (1996); *see also* ***Watters***, 550 U.S. at 12 ("[W]hen state prescriptions significantly impair the exercise of authority, enumerated of incidental to the NBA, the State's regulations must give way."). This type of preemption can arise in two ways: "from a direct conflict between state and federal law, such that compliance with both is impossible (called 'direct conflict'), or because a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress (called 'obstacle preemption')." ***College Loan Corp.***, 396 F.3d at 596 (citations omitted). First, there can be no dispute that this is not a direct conflict case. In other words, it would not be impossible to comply with the NBA and section 128(e) of the WVCCPA, as the statues are not in direct conflict with each other.[2] The only type of preemption remaining, therefore, is obstacle preemption. Before applying obstacle preemption, however, this Court will address COAF's argument that section 128(e) conflicts with the express language of the

---

[2]"An example of statutes in direct conflict is if the federal law said, 'you must sell insurance,' while the state law said, 'you may not.' ***Barnett***, 517 U.S. at 31. The NBA does not give instruction to national banks on the process of debt collection." ***Bate***, 2011 WL 2469689 at *4 n. 36 (citation omitted).

7

OCC's non-real estate lending regulation, 12 C.F.R. § 7.4008.

### 3. Applicability of Section 7.4008

Pursuant to section 7.4008(d), "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks." 12 C.F.R. § 7.4008(d). COAF argues that this language indicates that the NBA preempts section 128(e) of the WVCCPA because that provision restricts to whom it may communicate regarding its car loan. For the reasons that follow, this Court disagrees.

All relevant authority indicates that the OCC did not intend for section 7.4008 to preempt state debt collection laws of general application. First, a contrary holding would be incongruent with the recently-preserved authority of a state attorney general to enforce state debt collection laws. In *Cuomo*, the Supreme Court held that the OCC's exclusive visitorial authority granted by section 7.4000 could not be interpreted to preclude a state attorney general from enforcing state laws of general application. 129 S.Ct. at 2721. In support of its holding, the Court noted that "the Comptroller sought to limit the sweep of [section 7.4000] by the following passage set forth in the [OCC's] statement of basis and purpose in the Federal Register:

> What the case law does recognize is that 'states retain some power to regulate national banks in areas such as contracts, *debt collection*, acquisition and transfer of property, and taxation, zoning, criminal, and tort law.' [citing a Ninth Circuit case.] Application of these laws to national banks and their implementation by state authorities typically does not affect the content or extent of the Federally-authorized business of banking . . . but rather establishes the legal infrastructure that surrounds and supports the ability of national banks . . . to do business. 69 Fed. Reg. 1896 (2004) (footnote omitted).

*Id.* (emphasis added). Thus, it would be more than inconsistent for the OCC to represent

8

that section 7.4000 does not preclude a state attorney general from enforcing state debt collection laws, while concurrently promulgating section 7.4008 with the intention that the latter regulation preempt those same laws.

Second, the plain language of section 7.4008 itself provides further support for the conclusion that state consumer protection laws are not preempted. Section 7.4008(d)(2) provides that national banks "may make non-real estate loans without regard to state law limitations concerning," among other things, "[t]he terms of credit," including "balance, payments due," "the circumstances under which a loan may be called due," and "[d]isbursement and repayments." 12 C.F.R. § 7.4008(d)(2)(iv) and (ix). Significantly, this clause makes no mention of debt collection laws. In fact, section 7.4008(e) saves from preemption state laws concerning a national banks' "[r]ights to collect debts." 12 C.F.R. § 7.4008(e)(4). Courts of Appeals have interpreted this savings clause provision to include those state debt collection laws that regulate the *means* by which national banks collect their debts, not just the right to collect. See **Aguayo v. U.S. Bank**, — F.3d — , 2011 WL 3250465, *8-10 (9th Cir. Aug. 1, 2011); **Monroe Retail, Inc. v. RBS Citizens, N.A.**, 589 F.3d 274, 282-83 (6th Cir. 2009). The Fourth Circuit has not yet had the opportunity to reach the issue.

Based upon the foregoing authority, this Court concludes that section 7.4008 does not apply to preempt state debt collection laws of general applicability such as section 128(e) of the WVCCPA.

**B.** ***Frye*** and ***Lomax***

In its motion, COAF relies primarily upon this Court's decisions in ***Frye*** and ***Lomax***. In those cases, Frye and Lomax claimed that BAC Home Loans Servicing, LP ("BAC")

9

violated section 128(e) of the WVCCPA by contacting them directly after being notified of attorney representation. BAC argued that section 128(e) was preempted by the OCC's real estate lending regulation, 12 C.F.R. 34.4. In accepting BAC's argument, this Court stated as follows:

> First, the Court agrees that restricting to whom BofA may communicate regarding its mortgage loans implicates the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" by national banks. *See* 12 C.F.R. § 34.4(a)(10). On this basis alone, preemption is warranted. Alternatively, this Court finds that the undertaking required by the language "appears" would more than incidentally affect lending. *See* 12 C.F.R. § 34.4(b). In so finding, this Court concludes that the FDCPA's application to BofA, if it all, has no effect on the issue of preemption. The FDCPA prohibits a debt collector from communicating with a debtor it "knows" is represented by an attorney, whereas the WVCCPA prohibits communication whenever it "appears" that a consumer has attorney representation. *Compare* 15 U.S.C. § 1692c(a), *with* W.Va. Code § 46A-2-128(e). Pursuant only to the latter provision would a debt collector violate the law because it *should have known*, from appearances, that a consumer was represented by an attorney. Therefore, this Court finds that W.Va. Code § 46A-2-128(e) imposes a heavier burden than the FDCPA, and thus, more than incidentally affects lending. As such, W.Va. Code § 46A-2-128(e) is preempted by the NBA.

*Frye*, 2010 WL 3244879 at *7; *Lomax*, 435 B.R. at 371 (emphasis in originals).

Upon careful consideration, this Court finds that the above-quoted analysis was misguided for three reasons. First, in treating the OCC regulation as controlling, the Court incorrectly found that the OCC intended to preempt state debt collection laws of general application. *See Cuomo*, 129 S.Ct. at 2721; 12 C.F.R. § 7.4008(d)(2) and (e)(4). Second, in concluding that section 128(e) more than incidentally affected lending, this Court improperly contrasted the statute with the FDCPA, a federal law which "does not preempt state laws dealing with debt collection and provides that state laws are not inconsistent if they provide the consumer more protection . . .." *Bate*, 2011 WL 2469689 at *8 (citing 15

10

U.S.C. § 1692n). Finally, this Court's analysis was inappropriate to the extent it constituted a wholesale import of the two-step analysis which governs preemption under the Home Owners' Loan Act ("HOLA") and the regulations promulgated by the Office of Thrift Supervision ("OTS"). *See Smith*, 2011 WL 843937 at 8 (explaining the differences between the two preemption analyses). Accordingly, the holdings in *Frye* and *Lomax* will not control this Court's disposition of the instant motion.

### C. Application of Obstacle Preemption to W.Va. Code § 46A-2-128(e)

As explained above, section 128(e) of the WVCCPA is preempted only if it prevents or significantly interferes with COAF's exercise of its powers under the NBA, and thus, stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *See Barnett*, 517 U.S. at 33; *College Loan Corp.*, 396 F.3d at 596. In its motion, COAF argues that section 128(e) significantly interferes with its power to collect debts and thus conflicts with the NBA. This Court disagrees.

Section 128(e) of the WVCCPA generally prohibits all debt collectors from making "[a]ny communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained . . . ." W.Va. Code § 46A-2-128(e). If the consumer's "attorney fails to answer correspondence, return phone calls or discuss the obligation in question," however, a debt collector may begin to communicate directly with the consumer. Id.

Upon careful consideration, this Court concludes that applying section 128(e) would not significantly interfere with COAF's incidental lending power of debt collection. First, there can be no question that section 128(e) is a law of general applicability to the extent that it applies to all debt collectors doing business in West Virginia, not just to national

11

banks. *See Watters*, 550 U.S. at 12 (holding that national banks "are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA"); *see also Bate*, 2011 WL 2469689 at *8 ("There is no significant regulatory objective that would merit preempting a state law of general applicability that is designed to protect consumers from unscrupulous and egregious activity by debt collectors."). Second, COAF has failed to adequately explain how section 128(e) significantly interferes with its enumerated or incidental powers under the NBA. *See Smith*, 2011 WL 843937 at *10 (rejecting bank's assertion of preemption where it "has not adequately explained how complying with [the state law] at issue here would disrupt the workings of [its] business"). COAF may still make loans and collect on those loans, but it must abide by section 128(e) when doing so, just like every other debt collector in West Virginia. Third, the plaintiffs allege that during the relevant six week time period, Mr. O'Neal provided COAF's representative with his attorney's contact information on three separate occasions, including during the first two phone calls. ([Doc. 1] at ¶ 11, 12, 38). Thus, as applied to this case, the requirements of section 128(e) cannot be reasonably characterized as an obstacle to debt collection. *See H&R Block*, 591 F.3d at 722-23 (explaining that obstacle preemption is limited to an actual conflict between federal law and state law "as applied" in a particular case).

Therefore, this Court holds that section 128(e) of the WVCCPA does not prevent or significantly interfere with COAF's exercise of its powers under the NBA. Accordingly, the NBA does not preempt section 128(e), and COAF's motion to dismiss the plaintiffs' claim under that provision should be **DENIED**.

**CONCLUSION**

For the foregoing reasons, the Court finds that Defendant Capital One Auto Finance Inc.'s Partial Motion for Judgment on the Pleadings **[Doc. 106]** should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: September 29, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE